UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:08-CR-32 |
| V. ) | Greer/Inman |
| ) | |
| YANCY LEON RADFORD ) | |

## REPORT AND RECOMMENDATION

On April 10, 2007, Officer Joe Harrah of the Johnson City Police Department found a .45-caliber semi-automatic pistol on defendant's person. It subsequently was learned that defendant was a convicted felon, as a result of which he has been indicted in this court for a violation of 18 U.S.C.§ 922(g)(1). Claiming that the firearm was discovered and seized in violation of the Fourth Amendment, defendant has filed a motion to suppress evidence of it. (Doc. 16).

Defendant's motion was referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 16, 2008.

The only witness who testified at the suppression hearing was Officer Harrah. The facts surrounding the discovery and seizure of the weapon that ultimately resulted in defendant's indictment in this court are as follows:

On April 10, 2007, at 9:00 p.m. or shortly thereafter, a resident of a subdivision near East Tennessee State University in Johnson City called the police department to report that

shots were being fired from a nearby house in her neighborhood. The dispatcher relayed that information to Officer Harrah and other officers charged with the responsibility of patrolling this particular area of Johnson City. While in route, Officer Harrah and the other officers received a second call from the dispatcher, in which the dispatcher advised that another complaint of "shots fired" had been received. The caller had reported that one black male and a "couple of whites" had fired shots from the back porch of the house and then had run back into the house.

When the officers arrived at the address provided by the dispatcher, the woman who had made the calls to the police department was standing in her yard; she pointed to the defendant's house as the one from which the shots had been fired. One officer went to the front of the house, and Officer Harrah and another officer went to the back. In light of the reports of gunshots having been fired, one officer was armed with a shotgun, and the other officers had their sidearms drawn. As Officer Harrah approached the back porch, he noticed .45-caliber casings strewn about in the yard and on the porch itself. Officer Harrah knocked on the door, and defendant opened it. Officer Harrah asked defendant if any shots had been fired, to which defendant answered that there had been none, which obviously contradicted what the next-door neighbor had twice reported to the police department. Officer Harrah then asked if he or anyone in the house had a gun, and defendant again answered, "No." The officer asked if he could come into the house, and defendant invited him to enter. Officer Harrah again asked defendant if he had a gun, and defendant answered that he did not. At that point Officer Harrah asked defendant if he could pat him down, and in response

2

defendant lifted his arms above his head. Officer Harrah began his frisk at defendant's hips, and immediately discovered the .45-caliber semi-automatic handgun in defendant's left-back pocket.[1] Officer Harrah immediately seized the weapon. Officer Harrah testified that he seized the weapon from defendant because of the report of shots being fired in a city residential area. In other words, it was an issue of safety, both for the police officers and the public. Moreover, no one reasonably could doubt that shots indeed had been fired since a neighbor had called the police department on two separate occasions to so report, and there were empty .45-caliber casings on the back porch.

At this point, defendant had been placed on the floor, and he asked Officer Harrah if he and Harrah could go into the bedroom to talk and "work something out." Once in the bedroom defendant told Officer Harrah that he knew where some marijuana was located. When Officer Harrah asked where the marijuana was, defendant answered that it was on his living room floor, burning a hole in his carpet. Until that time, Harrah had failed to notice a burning "blunt" on the living room floor and marijuana on a table.

Inasmuch as Officer Harrah did not know at that time that defendant was a convicted felon, he only issued defendant a citation for the misdemeanor offense of simple possession of marijuana. He testified that he did not charge defendant with reckless endangerment based upon shooting a firearm out his back door because he had no way of knowing who actually fired the shots.

---

[1] After the weapon was discovered on defendant's person, another officer observed that another of the men in the room, Jonathan McInturff, had a handgun in his lap.

Defendant asserts in his motion that there was no justification for the warrantless entry into his home by Officer Harrah since, at the most, Officer Harrah then knew only that a "minor" offense - discharging a firearm - had been committed, citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984). He also notes that the police may enter a home without a warrant only when they have an objectively reasonably basis to believe that an occupant is seriously injured or imminently threatened with an injury, citing *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006).

Perhaps it is debatable whether shots fired in a city residential area is a "minor" offense. And, perhaps it is debatable whether officers may enter a house, without a warrant, and over the objections of the owners, to investigate a report of repeated gunfire in a residential area after dark. Certainly, parents of neighborhood children likely would hope that the police could - and would - do so. But, as far as the facts of this case are concerned, it is unnecessary to decide if police officers may enter a dwelling without a warrant, over the occupant's or owner's protestations, based upon a report of multiple shots being fired in a residential area. Officer Harrah testified that he asked defendant if he could enter the house, and defendant invited him to do so. Officer Harrah was an extremely creditable witness, and he is believed. Although defendant stated in his motion that "he was not the individual who opened the door to allow the police to enter . . . .", Officer Harrah testified otherwise, and defendant presented no evidence to support the factual assertion in his motion.[2]

---

[2]The defendant is required to raise and argue before the magistrate judge every factual and legal issue which he claims requires suppression. ¶ VII, Order on Discovery and Scheduling.

Once inside the house, the question becomes whether or not Officer Harrah was justified in frisking defendant. Again, based upon the reports of multiple shots being fired in a residential area at 9:00 at night, and the presence of .45-caliber shell cases on the back porch, common-sensical prudence justified a pat-down search of everyone in the area. But, again, it is unnecessary to decide that issue, inasmuch as the defendant consented voluntarily to Officer Harrah's request to pat him down.

For the reasons set forth above, it is respectfully recommended that defendant's motion to suppress (Doc. 16) be denied.[3]

Respectfully submitted,

s/ Dennis H. Inman  
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).